KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
BILAL MALIK - # 318767
bmalik@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

*Attorneys for Defendants OKX Inc. and Linda Lacewell*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MAURICIO S. BEUGELMANS, a resident of California,

Plaintiff,

v.

OKX INC., d/b/a "OKX," f/k/a OKCOIN USA, INC., a Delaware corporation; and LINDA LACEWELL, a resident of California,

Defendants.

Case No. 3:26-cv-07864-EMC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY**

Date: September 24, 2026
Time: 1:30 p.m.
Dept: Courtroom 5 – 17th Floor
Judge: Hon. Edward M. Chen

Date Filed: July 29, 2026

Trial Date: N/A

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiff's Request for Injunctive Relief Is Subject to Arbitration. ..... 2

B. Plaintiff Mischaracterizes the Relevant Authorities. ..... 3

C. Plaintiff Has Not Established That Judicial Intervention Is Necessary ..... 5

1. The Disputed Publications Do Not Warrant Judicial Intervention. ..... 5

2. Plaintiff Identifies No Ongoing or Imminent Conduct Requiring Judicial Intervention. ..... 6

3. The Arbitration Is Proceeding Apace, and Plaintiff Has Not Even Sought Interim Relief in JAMS. ..... 7

D. Plaintiff Cannot Shift His Burden to Defendants. ..... 9

E. The Separation Agreement Does Not Contain a Judicial Carve-Out. ..... 10

1. The Parties Did Not Agree to a Judicial Carve-Out. ..... 10

2. The "Sue" Language Does Not Create the Missing Carve-Out. ..... 10

3. The Non-Disparagement and Arbitration Provisions Require Arbitration of the Alleged Breach. ..... 12

F. Plaintiff's Sanctions Request Is Baseless. ..... 13

G. Plaintiff's and/or His Counsel's Conduct Warrants Leave to Seek Sanctions. ..... 13

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bennett v. Isagenix Int'l LLC*,
118 F.4th 1120 (9th Cir. 2024) ....................9

*Bennett v. Isagenix Int'l, LLC*,
2023 WL 4562605 (D. Ariz. July 17, 2023) ....................9

*Campbell v. J.P. Morgan Securities LLC.*,
2021 WL 5919826 (N.D. Cal. Dec. 15, 2021) ....................7

*Capriole v. Uber Technologies, Inc.*,
460 F. Supp. 3d 919 (N.D. Cal. 2020) ....................4, 13

*Cisco Systems, Inc. v. Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) ....................10

*Comedy Club, Inc. v. Improv West Associates*,
553 F.3d 1277 (9th Cir. 2009) ....................12

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012) ....................2, 10, 11, 14

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ....................5

*Evander Holyfield v. Julien Entertainment.com, Inc.*,
2012 WL 5878380 (C.D. Cal. Nov. 21, 2012) ....................3, 4, 9

*Ever-Gotesco Res. & Holdings, Inc. v. PriceSmart, Inc.*,
192 F. Supp. 2d 1040 (S.D. Cal. 2002) ....................7

*Facebook, Inc. v. BrandTotal Ltd.*,
499 F. Supp. 3d 720 (N.D. Cal. 2020) ....................6

*Gonick v. Drexel Burnham Lambert, Inc.*,
711 F. Supp. 981 (N.D. Cal. 1988) ....................14

*Greenwood v. CompuCredit Corp.*,
615 F.3d 1204 (9th Cir. 2010) ....................10, 11

*Head Kandy, LLC v. McNeill*,
2023 WL 6309985 (S.D. Fla. Sept. 12, 2023) ....................9, 10

*Jiaxing Super Lighting Elec. Appliance Co. v. Lunera Lighting, Inc.*,
2018 WL 6199681 (N.D. Cal. Nov. 28, 2018) ....................4, 5, 13

*NAVEX Global, Inc. v. Stockwell*,
2019 WL 6312558 (D. Idaho Nov. 25, 2019) ... 10

*Oberto Sausage Co. v. JBS S.A.*,
2011 WL 939615 (W.D. Wash. Mar. 11, 2011) ... 3

*Ortiz v. Golden Boy Promotions, LLC*,
2026 WL 585186 (D. Nev. Mar. 2, 2026) ... 3

*Pagliero v. Wallace China Co.*,
198 F.2d 339 (9th Cir. 1952) ... 15

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ... 11

*Rogers v. Lyft, Inc.*,
452 F. Supp. 3d 904 (N.D. Cal. 2020) ... 4

*Sampson v. Murray*,
415 U.S. 61 (1974) ... 4

*Stackla, Inc. v. Facebook Inc.*,
2019 WL 4738288 (N.D. Cal. Sept. 27, 2019) ... 6

*Styczynski v. MarketSource, Inc.*,
340 F. Supp. 3d 534 (E.D. Pa. 2018) ... 5

*Thales Avionics, Inc. v. L3 Techs., Inc.*,
719 F. Supp. 3d 337 (S.D.N.Y. 2024) ... 3

*Three Valleys Municipal Water District v. E.F. Hutton & Co. Inc.*,
925 F.2d 1136 (9th Cir. 1991) ... 13

*Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*,
609 F.3d 975 (9th Cir. 2010) ... 3

## I. INTRODUCTION

This lawsuit should ***never*** have been filed. What is now clear from Plaintiff's overheated pleadings is that he was determined to malign his ex-employer in public, despite his contractual and ethical obligations; to roll the dice and pursue relief that goes well beyond what the parties agreed to, including discovery to shore up claims he recognizes are baseless; and to force Defendants to expend resources, perhaps in the hopes that he might extract some sort of settlement. Consistent with that strategy, Mauricio Beugelmans now ***opposes*** a straightforward motion to compel arbitration, even after conceding that his Separation Agreement requires the Court to send this dispute to that forum.

It is unsurprising, then, that Plaintiff has no substantive opposition to Defendants' motion. Instead, he largely argues an undisputed proposition: that, in limited circumstances, courts have authority to issue interim relief before an arbitrator can act. But that point, and the cases Plaintiff cites in support of it, lead to two inescapable conclusions: that this dispute belongs in arbitration and that no judicial intervention is appropriate in this case. Indeed, judicial intervention is appropriate only where interim relief is ***necessary*** to preserve the status quo and the meaningfulness of arbitration before the arbitrator can act. Plaintiff fails even to explain what "status quo" he wants to preserve, fails to satisfy the exacting requirements for interim relief, fails to explain why he is entitled to federal discovery, and fails to articulate any basis on which Defendants' motion to compel arbitration could or should be denied.

In this case, nothing about waiting for an arbitrator to act threatens to eliminate any contractual right, destroy any physical or intellectual property, or otherwise place any meaningful relief beyond the arbitrator's reach. Plaintiff's own delays make this point: his disparagement claim supposedly arises from two publications issued ***months*** ago, and he identifies ***no*** ongoing conduct and ***no*** imminent threat, let alone one that would render arbitration meaningless. Indeed, despite threatening to seek a TRO, Plaintiff ultimately filed a provisional relief motion and then noticed it for hearing ***six weeks later***. And he has identified ***nothing*** that occurred in those intervening months that threatens the arbitrator's ability to act in ***any*** way. Nevertheless, Plaintiff improperly attacks his former client in public and pursues federal-court discovery "to uncover"

evidence of a disparagement claim that he cannot articulate. But the law does not allow plaintiffs to rewrite arbitration agreements simply because their goals have changed.

Finally, Plaintiff now insists that because the non-disparagement provision permits an aggrieved party "to sue for an injunction," it somehow confers a right to proceed in court. Misapplying the law, Plaintiff previously supported that proposition with an overturned Ninth Circuit decision he represented had been reversed "on other grounds." ECF No. 23-1 at 13. It was not. The Supreme Court reversed on the very ground for which Plaintiff cited it: the Ninth Circuit's now-reversed conclusion that a "right to sue" confers a right to a judicial forum notwithstanding an arbitration agreement. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100–05 (2012). In his Opposition, Plaintiff does not acknowledge that reversal, pivoting instead to a dictionary to salvage his argument. But what he fails to tell this Court is that the dictionary he relies on ***is the same one*** upon which the Ninth Circuit relied (and was reversed). What matters here is the Supreme Court's holding that it is "utterly commonplace" to describe legal rights in terms of a "suit," whether those legal rights are pursued in court or in arbitration. *Id.* at 100–01.

Ultimately, this dispute—no matter how thin it is—arises out of the parties' Separation Agreement. The parties negotiated a mechanism to resolve such disputes: arbitration. There is no doubt, and barely any serious disagreement, that this case must be resolved in that forum. Respectfully, the Court should grant Defendants' motion, compel this dispute (and Plaintiff's frivolous demands for interim relief) to arbitration, and grant Defendants leave to seek sanctions.

## II. ARGUMENT

### A. Plaintiff's Request for Injunctive Relief Is Subject to Arbitration.

There is no dispute that the Separation Agreement requires arbitration of "any dispute, claim or controversy" arising out of or relating to the Agreement, including "any . . . breach" of it. Mot. at 6. Indeed, Plaintiff concedes these points: he commenced JAMS arbitration himself and states that he "does not contest arbitrability." Opp. at 22. Plaintiff's request for injunctive relief arises from the very same alleged claims that he has placed, verbatim, in arbitration. His repeated recitation that Defendants refused to give their contractual obligations "teeth" through his self-interested stipulations, *see* Opp. at 1, 4, 19, 20, 20 n.9, 23, does not affect the parties' bargain.

The "teeth" here are the same as in any contract: if Plaintiff believes he has been harmed, he should prove his breach-of-contract claim in arbitration and pursue damages—just as Defendants plan to do. The only remaining question is whether, notwithstanding the parties' agreement, Plaintiff has shown that this Court ***needs*** to intervene to help the arbitrator. He has not.

**B. Plaintiff Mischaracterizes the Relevant Authorities.**

*Toyo Tire* states the governing rule: "a district court ***may*** issue interim injunctive relief on arbitrable claims ***if*** interim relief is ***necessary*** to preserve the status quo and the meaningfulness of the arbitration process." 609 F.3d 975, 981 (9th Cir. 2010) (emphases added). Plaintiff's Opposition largely ignores the critical limitation: judicial intervention must be "necessary." His cited authorities demonstrate what that requirement means, as Defendants already explained. *See* Mot. at 7–9. For example, in *Toyo Tire*, absent judicial intervention, termination of a decades-long supply agreement would have disrupted approximately sixty percent of the plaintiff's North American tire supply, thus decimating its business, before the arbitrators could act. *Id.* at 977–80. Even then, the district court was "less convinced that there is an equally serious question with regard to the defamation claim" that could justify Court intervention—the claim most analogous to the one Plaintiff asserts here. *Id.* at 978 n.2. Plaintiff does not address this point. Similarly, in *Ortiz*, a boxer was about to contract for future fights in a manner that would circumvent disputed promotional rights subject to arbitration. 2026 WL 585186, at *4 (D. Nev. Mar. 2, 2026). And in *Thales*, a transaction threatened to close before the arbitrators could adjudicate the plaintiff's contractual right to match the competing bid, creating a "realistic danger" that the arbitration would be rendered meaningless. 719 F. Supp. 3d 337, 349 (S.D.N.Y. 2024). Plaintiff does not address these points either.

Plaintiff's reliance on *Oberto Sausage Co. v. JBS S.A.*, 2011 WL 939615 (W.D. Wash. Mar. 11, 2011) does not aid his case. There, the defendant had already entered a joint venture with the plaintiff's largest U.S. competitor in alleged violation of an exclusivity agreement, and competitive products were expected to enter the U.S. market before the arbitrator could act. *Id.* at *2–3. The *Oberto* court thus confronted ongoing conduct that threatened imminent, concrete competitive harm before the arbitrator could intervene. *Id.* Similarly, in *Holyfield v. Julien*

*Entertainment.com, Inc.*, the defendants were scheduled to auction specifically-identified, unique and irreplaceable boxing memorabilia—including championship belts, Olympic memorabilia, and the gloves from Evander Holyfield's first victory over Mike Tyson—before the dispute could be arbitrated. 2012 WL 5878380, at *1, *5 (C.D. Cal. Nov. 21, 2012). The court therefore enjoined the impending sale to prevent the permanent loss of the very property at issue. *Id.* at *5–7.

Each of these cases involved an impending event that threatened to render subsequent arbitration meaningless. The instant case does not. *See* Mot. at 9–13 (outlining four reasons why this case is not like Plaintiff's cited authorities). Rather than address this distinction, Plaintiff instead falls back on the unremarkable proposition that this Court may (in particular circumstances) grant interim relief. That is true, but it is only the beginning of the inquiry, as Plaintiff's authorities confirm. For example, in *Rogers*, the court explained that "the principle that authorizes a pre-arbitration preliminary injunction—preservation of the parties' arbitral rights—also limits the court's discretion," such that relief is permissible only when necessary to preserve the meaningfulness of arbitration. 452 F. Supp. 3d 904, 912 (N.D. Cal. 2020) (cleaned up). And in *Capriole*, this Court held that "consideration of injunctive relief prior to deciding [a] Motion to Compel Arbitration would be improper" because the requested relief "would not preserve the meaningfulness of the arbitration process." 460 F. Supp. 3d 919, 927 (N.D. Cal. 2020).

These same authorities undermine Plaintiff's position here. He identifies economic injuries—lost employment, investment, and business opportunities—for which he already seeks damages in arbitration. *See* ECF No. 34 at 15–18. But "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (cleaned up). Regardless of his overwrought tone, Plaintiff identifies nothing that will irretrievably be lost before the arbitrator can act or that an arbitral award cannot later remedy.

Plaintiff fares no better by declaring Defendants "spectacularly wrong" about this Court's decision in *Jiaxing*. Opp. at 15 n.4. The Court's order there noted that the JAMS International Rules authorized both interim relief and an emergency procedure. *See* No. 18-cv-05091-EMC, ECF No. 33 (N.D. Cal. Nov. 8, 2018). But nothing in that order suggests that the Court's decision turned on the existence of the separate emergency procedure. Indeed, on reconsideration, the

Court did not mention the emergency procedure at all. Instead, it reiterated the rule that "once a court determines that all disputes are subject to arbitration pursuant to a binding arbitration clause, it is improper for a district court to grant preliminary relief where *provisional relief is available from an arbitral tribunal*." 2018 WL 6199681, at *1 (N.D. Cal. Nov. 28, 2018) (cleaned up; emphasis in original). Because the JAMS rules authorized the arbitrator to grant interim relief, the Court held that "the proper authority" to adjudicate the request was the arbitral tribunal. *Id.* at *1–2. Thus, *Jiaxing* turned on whether the arbitrator could provide the requested relief—not whether the applicable rules also provided a separate pre-appointment emergency procedure.[1]

**C. Plaintiff Has Not Established That Judicial Intervention Is Necessary.**

Applied here, the governing authorities make clear that Plaintiff cannot establish the necessity for judicial intervention.

**1. The Disputed Publications Do Not Warrant Judicial Intervention.**

In support of his claims, Plaintiff identifies only a Tweet from April and a *Law360* article from June. Plaintiff cannot establish a need for judicial intervention before the arbitrator can act based on such limited evidence, as underscored by Plaintiff's own cited authorities. Opp. at 18–19. In *Disney Enterprises, Inc. v. VidAngel, Inc.*, which concerned the unlicensed streaming of movies, the district court relied on "uncontroverted evidence" from a senior movie studio executive showing that the challenged conduct was undermining the studios' negotiating position and goodwill with licensees, including evidence that licensees had already raised concerns about competing unlicensed services. 869 F.3d 848, 865–66 (9th Cir. 2017). The Ninth Circuit thus found "substantial evidence" of present, existing harm to the studios' business model, negotiating leverage, and goodwill. *Id.* at 866. In contrast, Plaintiff identifies no prospective employer who declined to hire him, no investor who declined to invest, no communication from a prospective employer or funder, much less anything from any of those saying that the Tweet or the *Law360* article caused them to take a pass on Plaintiff and/or his new venture.

[1] Plaintiff's reliance on *Styczynski* is also misplaced. There, the parties expressly incorporated into their contract arbitral procedures for "emergency relief prior to the appointment of an Arbitrator." *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 539 (E.D. Pa. 2018). That contracts can provide for pre-appointment emergency relief in arbitration does not mean that the absence of such a provision establishes *Toyo Tire*'s necessity requirement.

Plaintiff's reliance on *Facebook, Inc. v. BrandTotal Ltd.* underscores the deficiency in his showing. 499 F. Supp. 3d 720 (N.D. Cal. 2020). The plaintiff there presented concrete evidence of actual harm: communications from "specific existing customers expressing concern," "specific potential customers suspending or postponing their negotiations," and evidence of lost venture-capital investment. *Id.* at 735. Plaintiff submits nothing remotely comparable here. *BrandTotal* also distinguished *Stackla, Inc. v. Facebook Inc.*, where a claimed threat to a business was "inherently speculative" because the plaintiffs failed to identify specific customers they had lost or were likely to lose. *Id.* at 734–35 (discussing 2019 WL 4738288, at *5 (N.D. Cal. Sept. 27, 2019)). Here, Plaintiff's showing resembles the "inherently speculative" showing rejected in *Stackla*, not the concrete evidence supporting relief in *BrandTotal*.

### 2. Plaintiff Identifies No Ongoing or Imminent Conduct Requiring Judicial Intervention.

Plaintiff's putative showing of future harm falls short, too. Indeed, it barely exists at all. He identifies no pending publication, transaction, deadline, destruction of property, expiring contractual right, or other imminent event that will frustrate the arbitrator's ability to provide relief. Instead, he argues Defendants ***might*** disparage him at some unknown time in the future because he believes they did so before.[2] Opp. at 18; *see also* Opp. at 5 ("[A]bsent relief . . . Mr. Beugelmans remains exposed to the unacceptable ***risk*** that Defendants continue to disparage him[.]") (emphasis added). That is hardly the necessity *Toyo Tire* requires.

Plaintiff is therefore wrong that judicial intervention is necessary because "there is no tribunal other than this Court that can act to maintain the status quo" before an arbitrator is appointed (emphasis omitted). Opp. at 13. The status quo is already being maintained. The parties remain bound by the non-disparagement provision, and Plaintiff identifies no purported acts of ongoing or future disparagement by Defendants. Mot. at 10. What remains is a dispute over

[2] Plaintiff also newly asserts that he is "informed and believes that OKX participates in non-public communications with regulators, licensing authorities, actual and potential customers and partners, investors, and others" in which OKX purportedly blames Plaintiff for compliance issues. Opp. at 9; *id.* at 8. That assertion is attorney argument, not evidence. It appears in no sworn declaration, nor was it alleged in Plaintiff's Complaint. In any event, Plaintiff does not identify any such communication, its speaker or recipient, when it occurred, or any basis for his purported belief. Piling on new speculation to the old does not necessitate judicial intervention.

whether two past publications violated that provision. The parties agreed to arbitrate that dispute, and waiting for the arbitrator to decide it does not threaten the meaningfulness of the arbitration.

What Plaintiff calls "preserving the status quo" thus amounts to judicial enforcement of his personal interpretation of the non-disparagement provision—the exact kind of relief the Court rejected in *Campbell v. J.P. Morgan Securities LLC*. There, the requested injunction would have "essentially require[d] Defendants to conform their conduct to [the plaintiff's] view of the key agreements." 2021 WL 5919826, at *3 (N.D. Cal. Dec. 15, 2021). Because "the nature and contours of that promise, and whether Defendants have lived up to it or not," were the central issues committed to arbitration, the requested relief sought less to preserve the status quo than to impose the plaintiff's disputed view of the agreements and was therefore denied. *Id.* The same is true here: whether Defendants' past statements violated the non-disparagement provision is a merits dispute for the arbitrator to decide, not a status quo for this Court to preserve.

Plaintiff's request for expedited discovery baldly confirms this point. He seeks discovery "to uncover written and verbal communications concerning him." ECF No. 23-1 at 24. Plaintiff is clearly unable to identify ongoing conduct that threatens the arbitration (because there is none), so he instead seeks to use federal discovery to rummage for evidence upon which to hinge his request. Mot. at 10–11. Plaintiff does not even attempt to dispute this point in his Opposition.

**3. The Arbitration Is Proceeding Apace, and Plaintiff Has Not Even Sought Interim Relief in JAMS.**

Plaintiff cannot manufacture an emergency from the ordinary time required to constitute an arbitral tribunal. *Ever-Gotesco*, which Defendants discussed in their motion and which Plaintiff ignores, captures the relevant principle: "[i]t is one thing to apply to a court to preserve the status quo until a duly constituted arbitrator can act; but it is quite another thing to consciously avoid taking steps that would give the arbitrator the ability to act and, instead to apply to another court for relief." 192 F. Supp. 2d 1040, 1044 (S.D. Cal. 2002) (citation omitted).

Plaintiff filed this action simultaneously with his arbitration demand, without first giving JAMS any meaningful opportunity to address his supposed emergency. He never requested or even inquired about expedited consideration of interim relief, nor did he propose an arbitrator to

Defendants to accelerate the process. ECF Nos. 26-5 at 4–5; 35-2 at 3. And when Defendants asked on August 13 whether Plaintiff wished to discuss any JAMS-related issues, his counsel responded: "Nope." ECF No. 34-1 ¶ 5. ECF No. 34 at 16 (detailing Plaintiff's delays and failure to seek expedited relief in JAMS). Even more tellingly, Plaintiff has not filed a motion for interim relief in JAMS at all. He submitted his arbitration demand on July 28, over one month ago, but never followed it with a motion for interim relief that would tee up his request for immediate decision once an arbitrator is appointed.

In any event, the arbitration *is* advancing. JAMS invoiced OKX for arbitration fees on August 25; OKX paid the invoice that same day; and on August 28, JAMS confirmed that OKX's payment had posted and a formal commencement letter is forthcoming. Malik Decl. ISO Reply ISO MTCA ¶¶ 7–9. Defendants' extension to respond to Plaintiff's arbitration demand does not prevent him from filing that motion now, as he suggests. *See* Opp. at 22. He filed his provisional relief motion here before Defendants responded to his Complaint; he can do the same in JAMS.

More fundamentally, the lack of urgency here predates any disagreement over JAMS administration. Plaintiff waited ***more than three months*** before commencing either this action or the JAMS arbitration. His subsequent decision to notice his provisional relief motion for ***six weeks later*** reinforces the point. Plaintiff's argument that delay attributable to the parties' efforts to resolve their dispute should not count against him, Opp. at 20–21, is beside the point.[3] Plaintiff had sat on his hands for months, long before that period, and has since added weeks of delay.

Plaintiff's attempt to manufacture uncertainty in the arbitration by threatening new claims—against new parties—changes nothing and just further highlights the weakness of his flailing efforts. *See* Opp. at 9–10, 22. The claims before this Court are against OKX and Ms. Lacewell, and Plaintiff concedes those claims belong and already are in JAMS, despite his

[3] Not for the first time, Plaintiff falsely accuses Defendants of breaking an agreement—he now claims that Defendants reneged on an agreement not to rely on the delay attributable to the parties' brief "standstill." *See* ECF No. 37 at 2–3, 9–10. But Defendants are not relying on that period. In any event, that "standstill" began on July 30 and ended on August 4—five days later. Malik Decl. ISO Reply ISO MTCA ¶¶ 2–6. It ended after a call in which Defendants refused to accede to Plaintiff's demands, and Plaintiff's counsel then wrote that Plaintiff had "nothing further to discuss" and would "proceed to promptly file" his papers. *Id.* ¶¶ 5–6. Even excluding that "standstill" period, by the time the September 24 hearing occurs, it will have been ***170*** days since the Tweet and ***91*** days since the Law360 Article.

opposition to Defendants' Motion. Whether Plaintiff attempts later to add new claims or parties does not establish a need for judicial intervention over his existing claims.

**D. Plaintiff Cannot Shift His Burden to Defendants.**

Having failed to meet his own burden, Plaintiff tries to turn the tables and asserts that *Bennett* and *Holyfield* place the burden on Defendants to show that the Agreement "affirmatively divests" this Court of authority to issue provisional relief. Opp. at 16 n.5. Wrong again. Neither case uses the phrase "affirmatively divests," much less holds that a party opposing interim relief bears the burden of proving that such relief should not issue. *Bennett* merely recognizes that "the [] existence of an arbitration provision does not necessarily preclude" interim judicial relief. *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024). It then cites *Toyo Tire* for the governing rule discussed above: judicial interim relief must be "necessary." *Id. Holyfield* likewise recognizes the same rule. 2012 WL 5878380, at *3. Neither case shifts the burden of establishing necessity from the party seeking extraordinary relief to the party opposing it. In fact, both cases illustrate the opposite. In *Bennett*, the *plaintiffs* presented evidence that termination of their contracts would cause millions of dollars in consequential damages. *Bennett v. Isagenix Int'l, LLC*, 2023 WL 4562605, at *5 (D. Ariz. July 17, 2023). Similarly, in *Holyfield*, the *plaintiff* presented evidence that unique and irreplaceable boxing memorabilia were scheduled to be auctioned on a date certain. 2012 WL 5878380, at *5.

Plaintiff employs the same burden-shifting maneuver with his repeated refrain that self-serving declarations are supposedly "uncontroverted" because Defendants offered "no evidence" to rebut his speculation. *See, e.g.*, Opp. at 3–5, 17–19. But Plaintiff's feigned reproof of Defendants ignores that his own declarations are pure speculation, devoid of any actual evidence. ECF No. 34 at 9–14, 17–21. There is thus nothing of substance for Defendants to rebut.

Plaintiff's reliance on *Head Kandy, LLC v. McNeill* only reinforces the point. There, the plaintiff presented evidence that it had lost two-thirds of its customer base, that sales and revenue had declined, and, critically, that multiple customers responded directly to the defendant's challenged statements by vowing never to purchase the plaintiff's products again; and purchase histories confirmed that those customers thereafter stopped buying its products. 2023 WL

6309985, at *15 (S.D. Fla. Sept. 12, 2023). Plaintiff offers nothing comparable here. Plaintiff's calling his own speculative declarations "uncontroverted" does not relieve him of his burden.

**E. The Separation Agreement Does Not Contain a Judicial Carve-Out.**

For his final Hail Mary, Plaintiff continues to assert that the Separation Agreement gives him a contractual right to litigate his request for injunctive relief in court. Opp. at 15–17. The Agreement contains no such carve-out, and its use of the word "sue" does not create one.

**1. The Parties Did Not Agree to a Judicial Carve-Out.**

The Separation Agreement nowhere states that either party may seek relief "in court," from a "court of competent jurisdiction," or anything similar. That omission is telling because Plaintiff's cited authorities demonstrate how parties actually draft judicial carve-outs when that is what they intend. For example, in *NAVEX Global, Inc. v. Stockwell*, the agreement expressly provided that arbitration "shall not limit" either party's right to "apply to a court of competent jurisdiction" for preliminary injunctive relief. 2019 WL 6312558, at *3 (D. Idaho Nov. 25, 2019). And in *Cisco Systems, Inc. v. Chung*, the agreement expressly stated that "nothing in this Agreement shall prevent either party from seeking from a court the remedy of an injunction" for specified claims. 462 F. Supp. 3d 1024, 1037 (N.D. Cal. 2020).

The contrast here is especially significant because Plaintiff is an experienced lawyer and, by his own account, the Separation Agreement was negotiated by sophisticated parties represented by counsel. Opp. at 2. Had the parties intended to exempt requests for injunctive relief from their broad agreement to arbitrate, they readily could have said so. They did not.

**2. The "Sue" Language Does Not Create the Missing Carve-Out.**

Plaintiff next tries to manufacture a judicial carve-out from the non-disparagement provision's statement that an aggrieved party may "sue for an injunction and/or damages or any other available relief." Opp. at 16. His argument is that "sue" necessarily means proceed in court. But the Supreme Court has already rejected that reasoning.

Plaintiff initially attempted to support this argument by citing *Greenwood v. CompuCredit Corp.*, 615 F.3d 1204 (9th Cir. 2010), for the proposition that a "right to sue" necessarily denotes access to a judicial forum. ECF No. 23-1 at 13. He represented to this Court that *Greenwood* had

been reversed "on other grounds." It was not. The Supreme Court reversed on the very ground for which Plaintiff cited the case: the Ninth Circuit's conclusion that language describing a "right to sue" conferred a judicial forum notwithstanding an agreement to arbitrate. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100–05 (2012). The Supreme Court explained that it is "utterly commonplace" to describe legal rights in terms of a "suit" without meaning—let alone guaranteeing—access to any particular judicial forum. *Id.* at 100–01.[4]

Plaintiff's Opposition neither acknowledges that reversal nor corrects his prior characterization of it. Instead, he relies on a dictionary definition of "sue" to advance the same proposition. Opp. at 16. But dictionaries do not uniformly define "sue" to require a judicial (or any) forum,[5] and, more fundamentally, Plaintiff's dictionary argument simply repackages the reasoning the Supreme Court rejected in *CompuCredit*. Indeed, the Ninth Circuit itself relied on definitions of "sue," "lawsuit," and "suit" from an earlier version of ***the same dictionary*** that Plaintiff relies on here to conclude that a "right to sue" necessarily meant a right to proceed in court. *Greenwood*, 615 F.3d at 1208 (relying on Black's Law Dictionary's definitions). The Supreme Court rejected that argument entirely and reversed. *CompuCredit*, 565 U.S. at 100–05. A dictionary therefore cannot answer the dispositive question: whether a reference to "sue" overrides an agreement requiring arbitration of all disputes. *CompuCredit* holds that it does not.

Plaintiff's interpretation also proves too much. The non-disparagement provision does not merely permit an aggrieved party to "sue for an injunction"; it permits that party to "sue for an injunction ***and/or damages or any other available relief***." Compl., Ex. A § 2.G (emphasis added). Plaintiff therefore cannot plausibly treat "sue" as an unstated forum-selection clause limited to injunctive relief. He appears to recognize this, as his Opposition now asserts (without

[4] Plaintiff mischaracterizes another Supreme Court decision in his Opposition. He cites *RadLAX Gateway Hotel, LLC v. Amalgamated Bank* for what he calls "hornbook contract law." Opp. at 17. But the quoted passage does not address contract interpretation at all; it applies the general/specific canon of statutory construction to provisions of the Bankruptcy Code. 566 U.S. 639, 645–46 (2012).

[5] Merriam-Webster defines the transitive verb "sue" as "to seek justice or right from (a person) by legal process," specifically "to bring an action against." *See* https://www.merriam-webster.com/dictionary/sue (accessed on August 31, 2026). Other dictionaries define "sue" in terms of taking "legal action" or instituting "legal proceedings." *See* https://dictionary.cambridge.org/us/dictionary/english/sue (accessed on August 31, 2026).

***any*** supporting authority) that this language "actually entitles Mr. Beugelmans to litigate his claims ***in full*** in this Court." Opp. at 16 n.6 (emphasis added). That interpretation would remove from arbitration the very breach claims that Plaintiff concedes are arbitrable—and that he submitted to JAMS. His position would also allow the non-disparagement provision to swallow the arbitration provision's express command that "any dispute, claim or controversy" concerning "any . . . breach of this Agreement" be resolved through arbitration. Compl., Ex. A § 2.J.

*Comedy Club* further demonstrates why Plaintiff's reading is wrong. There, the agreement used language far more court-specific than the word "sue": it permitted equitable remedies "in addition to arbitration" and provided that "the state and federal courts" would have "exclusive jurisdiction for such purpose." 553 F.3d 1277, 1281 (9th Cir. 2009). Yet the Ninth Circuit *still* declined to construe that language as broadly displacing arbitration. *Id.* at 1285–86. Plaintiff cites *Comedy Club* for the separate proposition that temporary judicial relief can sometimes aid arbitration, Opp. at 17 n.7, but that does not address the point for which Defendants cited it: even express language far stronger than the non-disparagement provision's "right to sue" language did not broadly remove equitable disputes from arbitration.

### 3. The Non-Disparagement and Arbitration Provisions Require Arbitration of the Alleged Breach.

The better, and only appropriate, reading gives effect to both provisions. The non-disparagement provision states that a violation of it "constitutes a breach of the Agreement" and identifies the remedies available for that breach: an aggrieved party may "sue for an injunction and/or damages or any other available relief." Compl., Ex. A § 2.G. The arbitration provision then addresses where disputes over such a breach must be resolved: "any dispute, claim or controversy arising out of or relating to any . . . breach of this Agreement" shall "be settled by final and binding arbitration." *Id.* § 2.J. The provisions use the same operative concept—"breach of the Agreement"—and fit together. Plaintiff's emphasis on the non-disparagement provision's "material" label and its available-remedies language, Opp. at 6, does not change that reading: those terms identify the significance and consequences of a breach, not the forum for resolving it.

Even if the relationship between the provisions was ambiguous, Ninth Circuit law requires

doubts concerning the scope of arbitration to be resolved in favor of arbitration. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1143–44 (9th Cir. 1991); Mot. at 14–15. Plaintiff does not even address *Three Valleys*, much less counter this point.

Finally, JAMS Employment Rule 24(e) does not create the judicial carve-out the Separation Agreement lacks. This Court construed substantively identical JAMS language in *Jiaxing* and explained that it "states simply that a party does not waive its right to arbitrate by applying for interim relief from a court." 2018 WL 6199681, at *2. It further recognized that courts applying substantively identical provisions have declined to carve interim relief out of arbitration even though the rules permitted parties to seek such relief in court. *Id.* Rule 24(e) therefore supplies no basis to infer the judicial carve-out that Plaintiff seeks.

**F. Plaintiff's Sanctions Request Is Baseless.**

After Plaintiff himself filed an admittedly arbitrable dispute in this Court, and then forced Defendants to move to enforce the parties' arbitration agreement, Plaintiff has the gall to seek sanctions against Defendants. Plaintiff asserts that Defendants' Motion is "duplicative" of his provisional relief motion. Opp. at 1–2, 22–25. It is not.

Defendants invoked the Federal Arbitration Act to enforce an undisputedly valid arbitration agreement against claims Plaintiff concedes must be arbitrated—and yet insisted on pursuing in this forum. Mot. at 5–7. The Court authorized Defendants to file their Motion. ECF No. 30. And this Court recognized in *Capriole* that a motion to compel arbitration may properly be resolved before a request for preliminary relief. 460 F. Supp. 3d at 927.

Nor are the two motions duplicative. Plaintiff's provisional relief motion asks the Court to preliminarily adjudicate the merits of his disparagement claim and impose a prior restraint on Defendants' speech while arbitration is pending. Defendants' Motion asks the Court to enforce the parties' agreement to arbitrate that dispute. Those are different questions and they seek different relief. There is no plausible basis to sanction Defendants for asking the Court to enforce an arbitration agreement which Plaintiff himself admits governs his claims.

**G. Plaintiff's and/or His Counsel's Conduct Warrants Leave to Seek Sanctions.**

Defendants' request for leave to seek sanctions, Mot. at 16–17, rests on materially

different grounds. Plaintiff is himself an attorney. Yet he filed this public action against his former client notwithstanding a Separation Agreement containing confidentiality obligations (in addition to his ongoing confidentiality duty to his former client) and a broad arbitration provision requiring "any" dispute concerning a breach to be finally resolved in JAMS.

More troubling, Plaintiff and his counsel supported his judicial-forum theory by citing a Ninth Circuit decision for a proposition that the Supreme Court reversed on the very ground for which he cited it, while telling this Court that the decision had been reversed "on other grounds." ECF No. 23-1 at 13. Defendants identified the error in their Motion. *Id.* at 13–14. Plaintiff's Opposition neither acknowledges it nor addresses *CompuCredit* at all. Instead, he doubles down, arguing that "sue" necessarily means a judicial forum, now without ***any*** case support, and relying on the same dictionary definition argument that the Supreme Court rejected.

Nor, despite his voluminous filings, has Plaintiff identified ***any*** case in which a court imposed interim judicial relief in the form of a prior restraint pending arbitration, based on completed allegedly disparaging statements, with no identified ongoing conduct or imminent event threatening the meaningfulness of arbitration. His own citations underscore the point: each involved concrete, impending threats to the arbitral process—circumstances entirely absent here.

Plaintiff emphasizes that *Gonick v. Drexel Burnham Lambert, Inc.*, 711 F. Supp. 981 (N.D. Cal. 1988), involved a party that refused to arbitrate, whereas he has commenced an arbitration. Opp. at 23. That distinction misses the point. Defendants cited *Gonick* for the broader principle that sanctions may be appropriate where a party forces its opponent to incur the expense of federal litigation over a dispute that clearly belongs in arbitration. *See* Mot. at 17. Plaintiff's parallel JAMS proceeding does not immunize his simultaneous decision to litigate the same arbitrable dispute here—particularly where he has identified neither law nor facts establishing a need for this Court to intervene before the arbitrator can act.

Plaintiff's conduct likewise belies the emergency he invokes. He waited more than three months to commence either proceeding, noticed his provisional relief motion for a hearing six weeks later, never asked JAMS to expedite proceedings, and has not submitted a motion for interim relief there. The contrast between Plaintiff's professed urgency in this Court and his

approach to JAMS cannot be reconciled.

Plaintiff's jurisdictional theory only heightens these concerns. *Pagliero*, on which he now relies, holds that jurisdiction exists if the complaint raises a "substantial claim of federal right" under the Lanham Act. *Pagliero v. Wallace China Co.*, 198 F.2d 339, 341 (9th Cir. 1952); *see* ECF No. 37 at 6 n.4. Yet Plaintiff identifies no authority that a legal publication's profile of an in-house lawyer constitutes "commercial advertising or promotion" under the Lanham Act. Nor does he address that the only relief he asks this Court to provide—provisional injunctive relief—is sought on his state-law breach-of-contract claim, not his Lanham Act claim.

Meanwhile, Plaintiff has used his voluminous public court filings to air accusations that have nothing to do with this dispute. Defendants' Motion identified inflammatory allegations concerning OKX, its executives, and others that bear no relationship to Plaintiff's putative disparagement claim or the extraordinary relief he seeks. Mot. at 16–17. Plaintiff does not answer that point. His Opposition continues the same course, gratuitously asserting, for example, that OKX "marginalized Mr. Beugelmans and drove him out of the exchange." Opp. at 6. That accusation has no discernible bearing on the underlying dispute or this Motion at issue, and concerns a claim that he specifically released through the Separation Agreement. Plaintiff's continued use of this public proceeding to air unrelated accusations regarding released claims reinforces Defendants' concern that his resort to a parallel federal forum serves purposes unrelated to obtaining genuinely necessary interim relief.

Defendants therefore respectfully maintain their request for leave to seek sanctions and the fees and costs caused by Plaintiff's improper resort to this forum.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court compel Plaintiff's claims and his request for provisional relief to the pending JAMS arbitration; stay this action pending completion of that arbitration; deny Plaintiff's request for sanctions; and grant Defendants leave to seek sanctions, fees, and costs.

/////

/////

Dated: September 2, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Bilal Malik*
STEVEN P. RAGLAND
NICHOLAS D. MARAIS
BILAL MALIK

*Attorneys for Defendants OKX Inc. and Linda Lacewell*